**In the United States District Court
for the District of Kansas**

_____

Case No. 22-cr-40055-TC-1

_____

UNITED STATES OF AMERICA,

*Plaintiff*

v.

ROGER GOLUBSKI,

*Defendant*

_____

**MEMORANDUM AND ORDER**

Roger Golubski is charged with six counts of willfully depriving S.K. and O.W. of their right "not to be deprived of liberty without due process of law" while acting under color of law in violation of 18 U.S.C. § 242. Doc. 1 (describing a "right not to be deprived of bodily integrity"). The Government moves to admit the testimony of seven other alleged victims. Doc. 50. For the following reasons, the Government's motion, Doc. 50, is granted.

**I**

**A**

Evidence of an individual's character is almost always inadmissible because it introduces the possibility that a jury will convict a defendant because of his or her nature rather than the facts. *Michelson v. United States*, 335 U.S. 469, 476 (1948); *see also* Fed. R. Evid. 404(b)(1). But there are exceptions to this general rule.

**1**. Fed R. Evid. 413 is one exception. *United States v. Benally*, 500 F.3d 1085, 1089 (10th Cir. 2007). It provides that "in a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." Fed. R. Evid. 413(a). Such evidence "may be considered on any matter to which it is relevant." *Id.* And it may be admitted to prove an

1

individual's propensity to commit sexual assault. *United States v. Batton*, 602 F.3d 1191, 1197 (10th Cir. 2010).

There are four prerequisites for admitting evidence under Rule 413. First, the defendant must be accused of a crime involving sexual assault. *Benally*, 500 F.3d at 1090. Second, the other acts must also involve sexual assault. *Id.* Third, the evidence must be relevant. *Id.* Fourth, a district court must make a preliminary finding that a jury could reasonably find "by a preponderance of the evidence that the 'other act[s]' occurred." *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998), *opinion clarified*, No. 96-2285, 1998 WL 133994 (10th Cir. Mar. 25, 1998).

Evidence that satisfies the four prerequisites is nevertheless subject to exclusion if it fails the balancing test laid out in Rule 403. *Enjady*, 134 F.3d at 1431. Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, delay, or is needlessly cumulative. *Batton*, 602 F.3d at 1198.

There are special considerations in applying Rule 403 to evidence admissible under Rule 413. In the Tenth Circuit four overarching issues must be considered: "how clearly the prior act has been proved," "how seriously disputed the material fact is," "whether the government can avail itself of any less prejudicial evidence," and "how probative the evidence is of the material fact it is admitted to prove." *Benally*, 500 F.3d at 1090; *see also Enjady,* 134 F.3d at 1433 (noting that Rule 413 would be unconstitutional without the guardrails of special Rule 403 factors). When considering how probative the evidence is, the Tenth Circuit directs courts to consider "the similarity of the prior acts and the charged acts," "the time lapse between the other acts and the charged acts," "the frequency of the prior acts," "the occurrence of intervening events," and "the need for evidence beyond the defendant's and alleged victim's testimony." *United States v. Guardia*, 135 F.3d 1326, 1331 (10th Cir. 1998); *see also Batton*, 602 F.3d at 1198. And, when considering the prejudicial dangers, a court must ask "how likely it is such evidence will contribute to an improperly-based jury verdict," whether "such evidence will distract the jury," and "how time consuming it will be to prove the prior conduct." *Benally*, 500 F.3d at 1090.

**2**. Rule 404(b)(2) is another exception to the general rule that evidence of bad character is inadmissible. Rule 404(b)(2) specifies that evidence of "any other crime, wrong, or act" may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge,

2

identity, absence of mistake, or lack of accident." *See United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001) (noting that this list is not exhaustive).

The "threshold inquiry" in admitting evidence of similar acts under Rule 404(b)(2) is that the "evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988); *see United States v. Henthorn*, 864 F.3d 1241, 1248 (10th Cir. 2017). The party seeking admission must specifically articulate the relevance and proposed purpose of the evidence; the inference that the defendant has the propensity to commit the crime charged cannot play a role in the proposed purpose. *United States v. Commanche*, 577 F.3d 1261, 1267 (10th Cir. 2009). If other acts evidence is admitted under this rule, and the defendant so requests, a court must issue a limiting instruction cautioning the jury "to consider the evidence only for the limited purposes for which it is admitted and not as probative of bad character or propensity to commit the charged crime." *United States v. Mares*, 441 F.3d 1152, 1157 (10th Cir. 2006). Rule 404(b)(2) evidence is also subject to Rule 403 but there are no special factors to apply. *Id.*

**B**

The first three of Golubski's charges stem from separate instances of alleged sexual assault of a victim, identified in the pleadings as S.K., occurring between May 1998 and December 2001. Doc. 1 at 1–3.[1] The other three charges stem from alleged sexual assaults of another victim, identified as O.W., occurring between August 1999 and December 2002. Doc. 1 at 3–5.

The Government contends that Golubski also sexually assaulted other victims and seeks to admit evidence of those uncharged acts. Doc. 50. In particular, the Government alleges Golubski sexually assaulted five other victims, identified in the pleadings as OV 1–5, and attempted to sexually assault two others, identified as OV 6 and 7.[2] Doc. 50 at 1.

---

[1] All document and page citations are to the document and page number assigned in the CM/ECF system.

[2] Consistent with the conventions used within the parties' briefs, each of the additional other victims will be referred to by the abbreviation "OV" plus a number.

3

The Government argues that the testimony of OVs 1–5 is admissible under Rule 413 or in the alternative under Rule 404(b). Doc. 50 at 20, 40 n.9. It argues that the testimony of OVs 6–7 is admissible under Rule 404(b)(2). Doc. 50 at 39.[3] In support of its motion, the Government offers extended summaries of the proposed testimony of OVs 1–7. *See* Doc. 50 at 12–17, 18–20. The uncharged sexual assaults and attempted assaults allegedly occurred beginning in approximately 1983 and continued through at least 2004. Doc. 50 at 11, 46. The Government contends these summaries are consistent with 302 Reports memorializing investigative interviews of OVs 1–7. Doc. 50 at 10, 17.[4] The parties agree that the Government's motion can be resolved on the briefs by assuming the summaries will be recounted at the forthcoming trial. This is consistent with the approach taken by other district courts in the Tenth Circuit. *See, e.g., United States v. Rogers*, No. CR-21-232, 2022 WL 1150673, at *2 (E.D. Okla. Apr. 18, 2022).

## II

The testimony of OVs 1–5 is admissible under Rule 413. A jury could find by a preponderance of the evidence that the uncharged acts occurred, and the testimony is relevant, probative, and not subject to exclusion under Rule 403. The testimony of OVs 6 and 7 is admissible under Rule 404(b)(2) as it is relevant, probative, and offered to prove identity, a permissible purpose. As a result, the Government's motion to admit the testimony of all seven other victims is granted.

### A

The proffered testimony of OVs 1–5 meets the four threshold requirements for admission under Rule 413. And, applying the special factors applicable to Rule 413 evidence, *see United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998), the probative value of the proposed testimony is not substantially outweighed by prejudicial dangers. As a result, the Government's motion is granted regarding OVs 1–5.

**1.** A party seeking to admit evidence of other sexual assaults bears the burden of satisfying Rule 413(a). That rule provides, in pertinent

---

[3] The Government does not argue that the proposed testimony of OV 6 or 7 is admissible under Rule 413. Doc. 50 at 40.

[4] A 302 Report "memorializes an FBI agent's witness interview." *United States v. Cordova*, 25 F.4th 817, 822 n.4 (10th Cir. 2022).

part, that "in a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." Fed. R. Evid. 413(a). The Government has established that the proffered testimony of OVs 1–5 meets the four threshold requirements.

The parties generally agree about the first three threshold requirements. First, Golubski is charged with crimes involving acts of sexual assault as that term is defined in Rule 413(d). Second, he concedes that the proffered testimony of OVs 1–5 relates to other instances of alleged sexual assault. Doc. 54 at 2; *see also* Doc. 55 at 2. Third, Golubski does not dispute that the testimony of OVs 1–5 is relevant. *Cf. United States v. Rogers*, No. CR-21-232, 2022 WL 1150673, at *3 (E.D. Okla. Apr. 18, 2022) (noting that Rule 413 evidence was relevant because it was probative of "the disputed fact of [d]efendant's sexual interest in minor females and his propensity to commit acts of sexual contact with minors").

Regarding the fourth prerequisite, a reasonable jury could find by a preponderance of the evidence that the "other act[s]" described by OVs 1–5 occurred for at least two reasons. First, the "other act" evidence consists of detailed personal testimony about the alleged "other acts," including the nature and circumstances of the alleged forced sex acts committed against each of the OVs, the locations of the acts, and any follow-up threats allegedly made. *See* Doc. 50 at 3–16. Golubski's situation, therefore, is not akin to the one in *United States v. Edwards*, where the proffered testimony consisted of the fact that a witness had "heard 'rumors'" about "unspecific" allegations of sexual abuse lodged by others against the defendant. 272 F. Supp. 3d 1270, 1286 (D.N.M. 2017). So, Golubski's objection that the testimony of OVs 1–5 amounts to unproven, untested personal narrative and therefore no jury could credit it, lacks merit. *Contra* Doc. 54 at 13. The Government has proffered testimony, which the parties agree must be accepted as true for purposes of this motion, of the specific facts each OV intends to relay: the where, what, when, and how of the events. There is no requirement that a neutral arbiter must have found the acts occurred before a jury can conclude that they did, provided the acts are specific, the testimony is detailed, and it does not involve inadmissible hearsay. *Cf. United States v. Guinn*, 89 F.4th 838, 847–49 (10th Cir. 2023) (upholding the admission of other acts evidence under Rule 413 when it involved detailed personal testimony).

Second, the proposed testimony is largely consistent across cases as each of the OVs shares at least two of three overlapping factors. In

six of the seven relevant cases for purposes of the Rule 413 analysis (OVs 1–5, S.K., and O.W.), Golubski allegedly approached the victim with an offer of assistance related to his role as a police officer. *See* Doc. 50 at 3, 4, 8, 9, 12, 13, 14, and 17. In a separate set of six cases, Golubski allegedly isolated the victim in an environment he could control, often the same location another victim attests she was assaulted in. *See id.* at 3, 12, 13, 14, 16, and 17. And six of the seven victims allege Golubski made specific and similar follow-up threats designed to keep the alleged victim quiet. *See id.* at 5–7, 9–10, 13, 15, and 16. While not all seven of the stories align perfectly in every respect, that does not undermine their persuasive value. If anything, a perfect match on every possible detail might imply improper coercion or coaching.

Having met the threshold requirements for admission under Rule 413, the proposed testimony of OVs 1–5 is presumptively admissible. *See United States v. Perrault*, 995 F.3d 748, 769 (10th Cir. 2021); *see also Benally*, 500 F.3d at 1090; *United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir. 1997). It nevertheless remains necessary to apply Rule 403.

**2**. Golubski contends that Rule 403 requires exclusion. Doc. 54 at 11. But the probative value of the testimony of OVs 1–5 is not substantially outweighed by prejudicial dangers.

Both Congress and the Supreme Court have recognized that Rule 413 evidence is useful in trials concerning allegations of sexually violent behavior. *See United States v. Enjady*, 134 F.3d 1427, 1430 & n.1 (10th Cir. 1998) (recounting congressional considerations leading to Rule 413 and 414); *see also Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) (recognizing prior instances of violent conduct are important indicators of future tendencies). Still, employing uncharged prior acts (often with incendiary facts) to acquire a conviction implicates serious due process concerns unless the safeguards of Rule 403 are rigorously applied. *Enjady*, 134 F.3d at 1433. District courts must act as gatekeepers by considering a variety of factors the Tenth Circuit first adopted in *Enjady* and making a clear record why the proffered evidence survives the Rule 403 balancing test. *United States v. Benally*, 500 F.3d 1085, 1090–91 (10th Cir. 2007); *see also United States v. Guinn*, 89 F.4th 838, 847 (10th Cir. 2023) (describing the *Enjady* decision as a "guidepost for courts undertaking the Rule 403 analysis for Rule 413 evidence").

As such, the following addresses the first three overarching *Enjady* factors before directly assessing the fourth, probative value. It then assesses the prejudicial dangers Golubski identifies.

**a**. Applying the first three *Enjady* factors is straightforward on this record. The first factor to consider is how clearly proven the other acts are. *Enjady*, 134 F.3d at 1433. This factor weighs against the Government. OVs 1–5 will provide evidence of their experiences with Golubski through direct testimony, but there is no contemporaneous factual finding from a tribunal or a conviction in any of their cases. Their statements are memorialized in 302 Reports, which bolsters the external validity of the allegations. *See United States v. Fred*, No. CR 05-801, 2006 WL 4079618, at *1 (D.N.M. Dec. 1, 2006). But those reports were made many years after the alleged encounters and without any corroboration. *See* Doc. 54 at 13. That weighs against admissibility. *Compare Enjady*, 134 F.3d at 1434 (admitting Rule 413 evidence where the victim filed a contemporaneous police report), *with Batton*, 602 F.3d at 1198 (admitting Rule 413 evidence where the defendant accused of a subsequent act had been previously convicted of a similar act).

The absence of contemporaneous corroboration or a conviction is, nevertheless, not a reason to exclude the proposed testimony. *See, e.g., United States v. Guinn*, 89 F.4th 838, 848 (10th Cir. 2023) (noting that one of the other victims "failed to report" the defendant's repeated sexual assaults when an opportunity arose, but finding no "plain error" in admitting the evidence). And that is especially true if there is an obvious reason in the record for reporting delays, as when the alleged perpetrator was in a prominent position in the victim's community, *see United States v. Mann*, 193 F.3d 1172, 1174 (10th Cir. 1999), or a law enforcement officer, *see United States v. Guidry*, 456 F.3d 493, 499 (5th Cir. 2006). That describes the situation in this case: Several of the OVs propose to testify that they did not originally come forward at the time of the alleged assaults out of fear of organized law enforcement retribution orchestrated by Golubski. *E.g.,* Doc. 50 at 15, 27.

The second factor is how seriously the parties dispute the material facts the proposed evidence is admitted to prove. The parties vigorously dispute the credibility of S.K. and O.W. *See, e.g.*, Doc. 54 at 16–19. In other words, they dispute whether Golubski sexually assaulted these women. That dispute means the second factor weighs in favor of admission, so long as the testimony of OVs 1–5 is probative of S.K. and O.W.'s claims. *See United States v. Sturm*, 673 F.3d 1274, 1286 (10th Cir. 2012) ("The more seriously disputed the material fact, the more heavily this factor weighs in favor of admissibility."). And it is probative. In particular, the fact that many unique details of S.K. and O.W.'s stories also appear in the proposed testimony makes it more likely that the trier of fact will find S.K. and O.W. credible. This is precisely why

7

Congress enacted Rule 413. *See United States v. Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010) ("Congress enacted these rules because these types of cases often raise questions regarding the victim's credibility and a defendant's prior conduct can be especially probative.").

The third factor asks whether less prejudicial evidence is available. The Government persuasively contends that there is no other similarly probative evidence of which it can avail itself in this case. That too weighs in favor of admission. As the Government puts it, "[n]ot only are there no independent witnesses, but there is also no DNA, no physical or forensic evidence, no photographic or video evidence, no text messages or phone records, and no GPS or cell phone tracking evidence" because the charged sexual assaults allegedly occurred more than 20 years ago. Doc. 50 at 32.

Golubski responds that the testimony of S.K. and O.W. accomplishes what OVs 1–5 would accomplish and therefore that S.K. and O.W.'s testimony is a less prejudicial substitute. Doc. 54 at 20. He is mistaken on this point. For one thing, Rule 413 allows the admission of the testimony of *other* victims precisely because that evidence is more probative of propensity than the testimony of the principal victims alone. *See Enjady*, 134 F.3d at 1431; *cf. United States v. Vafeades,* No. 2:14-CR-00153, 2015 WL 9273936, at *13 (D. Utah Dec. 18, 2015) ("The need for evidence beyond the testimony of [the defendant] and Victims A and B is great because this pattern of control and assault is so striking."). For another, Golubski's argument would defeat any use of Rule 413 in any case where the Government alleges a defendant sexually assaulted more than one victim, which would be contrary to accepted practice. *See, e.g., United States v. Benally*, 500 F.3d 1085 (10th Cir. 2007) (allowing testimony from four other alleged victims of uncharged but similar conduct under Rule 413).

**b**. The last overarching *Enjady* factor—how probative the evidence is of the fact it is admitted to prove—also weighs in favor of admission. Based on the specific factors the Tenth Circuit has outlined for assessing the probative value of Rule 413 evidence—similarity, the presence of a time gap, the frequency of the acts, whether intervening factors are present, and the marginal need for the evidence—the proposed testimony has high probative value. *See Benally*, 500 F.3d at 1090.

The charged and other acts are similar. Each involve nearly the same alleged set of forced sex acts and were perpetrated using the same set of tactics: employment of information only a police officer would know to construct an offer of aid to a vulnerable victim, seclusion of

the victim, use of violence, similar threats of death or imprisonment of a family member, and follow-up visits to ensure silence. *See* Doc. 50 at 10–11. And each of the victims fit a certain profile: a Black woman made vulnerable by her or her family members' interactions with the criminal justice system within the community where Golubski served. *Id.* That is sufficient similarity under existing precedent. *See Benally*, 500 F.3d at 1092 ("Contrary to [defendant's] assertions, the prior incidents contain significant similarities to [the charged] assault: each involved a young woman whom [the defendant] previously knew and two were close relatives; all involved force of some type."); *see also Batton*, 602 F.3d at 1198 (holding that a pattern of "grooming and assaulting young male victims" is a sufficient shared similarity).

Golubski attempts to distinguish the testimony of OVs 1–5 by suggesting that the number of assaults, specific sex acts alleged, and age of the victims was not precisely the same in each case. Doc. 54 at 15. But the similarities overwhelm these distinctions. *Cf. United States v. Perrault*, 995 F.3d 748, 767 (10th Cir. 2021) (holding that minor differences among alleged victims, for example age differences, are immaterial to the admissibility of Rule 414 other acts evidence). Likewise, his argument that the events involving OVs 1–5 happened too long ago to be probative is misplaced and does not preclude admission. *Contra* Doc. 54 at 16–18. All allegations of wrongdoing—both those in the Indictment and the ones involving the OVs—are alleged to have occurred between the mid-to-late 1980s and 2004 with no gaps. Doc. 50 at 3, 10–11.

Golubski also contends that an intervening circumstance—the publicity surrounding the Lamonte McIntyre proceeding—precludes admission.[5] Doc. 54 at 15. An intervening circumstance may undercut the probative value of Rule 413 evidence when it casts doubt on the continued existence of a propensity to commit sexual assault. *Benally*, 500 F.3d at 1093. This happens, for instance, when a defendant had a propensity to commit sexual assault while drinking but no longer drinks alcohol. *Id.* Another example might be a change in marital,

---

[5] *See McIntyre v. Unified Gov't of Wyandotte Cnty. & Kan. City, Kan.*, No. 18-2545, 2022 WL 2337735 (D. Kan. June 28, 2022) (considering civil claims made against Golubski and his employer claiming that "defendants arrested, prosecuted and imprisoned Lamonte McIntyre for murders that he did not commit"); *see also* Eduardo Medina, *Ex-Police Detective Suspected of Preying on Black Women Faces U.S. Charges*, N.Y. Times (Sep. 15, 2022), https://www.nytimes.com/2022/09/15/us/kansas-police-officer-sexual-assault.html.

employment, and parental status that reduces or eliminates a propensity to commit sexual assault. *See United States v. Cole*, No. 22-CR-98, 2022 WL 17987066, at *10 (E.D. Okla. Dec. 29, 2022).

The publicity surrounding *McIntyre* does not constitute such an intervening circumstance. *Contra* Doc. 54 at 15. For one thing, it is unrelated to the purpose at issue. The proposed testimony is offered to establish Golubski had a propensity to commit sexual assault during the relevant time period. The subsequent publicity does not suggest that propensity did not exist. *Cf. United States v. Fourkiller*, No. 23-CR-106, 2024 WL 659365, at *4 (E.D. Okla. Feb. 12, 2024) (accepting that "adulthood, marriage, fatherhood, and employment as a teacher" are intervening factors which undercut a propensity to commit sexual assault that may have existed prior to these events). And for another, the *McIntyre* case is not actually intervening. The alleged assaults that OVs 1–5 intend to discuss all occurred prior to publication of the *McIntyre* facts.[6]

**c.** The final step is to consider possible prejudice. Ultimately, the dangers that exist do not substantially outweigh the probative value of the evidence.

Golubski argues that cross-examining and impeaching OVs 1–5 will take up a considerable amount of time and amount to a series of mini-trials. Doc. 54 at 22–26. There is no doubt that inclusion of OV 1–5's testimony will expand the trial, but many courts have found that other victim testimony is not *unnecessarily* time consuming or cumulative if the Government narrowly tailors its line of questioning to similarities between the other acts and the charged act. *See, e.g., Cole*, WL 17987066, at *11; *United States v. LaSarge*, No. 22-CR-160, 2023 WL 1879997, at *7 (E.D. Okla. Feb. 10, 2023); *United States v. Roberts*, 185 F.3d 1125, 1142 (10th Cir. 1999) (affirming discretion to admit testimony regarding other uncharged acts from six victims despite the extension in trial time). The Government agrees to limit its questioning and, if the proposed testimony becomes unnecessarily duplicative, that can be addressed at trial. *Huddleston v. United States*, 485 U.S. 681, 690 (1988) (holding district courts have inherent power to control the

---

[6] A final element in assessing probative value is the need for the evidence. *United States v. Guardia*, 135 F.3d 1326, 1331 (10th Cir. 1998). It should be reiterated that the Government's need for the evidence is weighty. *See* Section II.A.2., *supra*. There is no less prejudicial evidence available, and the parties strenuously dispute the credibility of S.K. and O.W. *Id.*

presentation of evidence at trial). Moreover, there is no "maximum number" of Rule 413 witnesses that district courts may allow, even if the practical reality is that district courts should consider "the diminishing marginal return on each additional witness's testimony" when managing trial. *United States v. Perrault*, 995 F.3d 748, 769 (10th Cir. 2021) (citing *United States v. Cunningham*, 694 F.3d 372, 389–90 (3d. Cir. 2012)).

The danger of jury confusion or an improper verdict is not serious enough to substantially outweigh the probative value of the evidence. *Contra* Doc. 54 at 27–29. Golubski argues that introducing testimony from OVs 1–5 will overwhelm the jury such that a preponderance-of-the-evidence standard will replace the beyond-reasonable-doubt standard. Doc. 54 at 27. That danger is overstated. The possibility that a jury will be so confused by the additional testimony that it convicts on inadequate grounds is present in every case with Rule 413 evidence. *Contra* Doc. 54 at 29. Unless there is some special reason why the Rule 413 evidence is confusing, the fact that it is admissible on a preponderance standard is not a reason to keep it out. *See United States v. Guardia*, 135 F.3d 1326 (10th Cir. 1998) (affirming the exclusion of Rule 413 evidence because expert testimony was necessary for the jury to determine whether the uncharged acts were medically appropriate). Golubski raises no reason why the proposed testimony from OVs 1–5 will require experts for the jury to properly weigh it. *See* Doc. 55 at 10. Nor does *United States v. Grigsby* counsel a different conclusion. 272 F. App'x 738, 739 (10th Cir. 2008) (affirming grant of a mistrial where a Rule 413 witness committed perjury at trial). While *Grigsby* certainly reflects the potential danger for an unfair trial due to the admission of Rule 413 evidence, it does not establish that the Rule 403 balancing test tips against the OVs at this point. But that will remain a live question throughout these proceedings. *See, e.g., United States v. Cole*, No. 22-CR-98, 2022 WL 17987066 (E.D. Okla. Dec. 29, 2022) (vacating a prior order finding Rule 414 evidence inadmissible in light of "full consideration of the record").

## B

Evidence of other uncharged wrongs is admissible when it is relevant, proposed for a proper purpose under Rule 404(b)(2), and not subject to exclusion based on Rule 403. *United States v. Mares*, 441 F.3d 1152, 1156–57 (10th Cir. 2006). The proposed testimony of OVs 6 and 7 satisfies those requirements.

11

The proposed testimony of OVs 6 and 7 is relevant. That is because it tends to make a disputed issue of fact—whether Golubski sexually assaulted S.K. and O.W—more or less probable. *Contra* Doc. 54 at 7, 10. And nothing about the fact that the assaults were unsuccessful changes that conclusion. *Cf. United States v. Stewart*, 540 F. Supp. 3d 1058, 1059 (E.D. Okla. 2021) (finding that allegations of attempted sexual assault were relevant to a charge of sexual assault and attempted sexual assault).

Likewise, the Government identifies a proper purpose under Rule 404(b)(2). It asserts that the testimony demonstrates that Golubski employed similar tactics in the attempted assaults of OVs 6 and 7 as he did in the alleged assaults of S.K. and O.W. Doc. 50 at 40–41.[7] That is tantamount to suggesting that he had a unique *modus operandi* that he followed in each of the encounters. *See id.* at 42.

Evidence that the accused "proceeded by a unique *modus operandi*" is admissible to prove the identity of the perpetrator of the charged acts. *United States v. Smalls*, 752 F.3d 1227, 1238 (10th Cir. 2014). The Tenth Circuit has upheld admission on *modus operandi* grounds under Rule 404(b)(2) in cases where the past acts had a "signature quality." *United States v. Shumway*, 112 F.3d 1413, 1420 (10th Cir. 1997) (e.g., the fact that thefts occurred at the same remote address and required specialized skill); *see also United States v. LaFlora*, 146 F. App'x 973, 975 (10th Cir. 2005) (e.g., the bank robberies involved the same series of acts each time, such as leaving one robber to guard the lobby). But there is no requirement that the acts be perfectly identical. *Shumway,*

---

[7] The Government identifies two other purposes, knowledge and motive. Doc. 50 at 40–41 (arguing that Golubski acquired knowledge over time from repeated assaults and that his motive was sexual pleasure). Neither will be considered because the evidence is admissible to establish *modus operandi*. Indeed, each raises difficult questions with nonobvious resolutions. Inferring knowledge from past, repeated acts is dangerously close to a forbidden propensity inference. *See* 22B Wright & Miller, Federal Prac. & Proc. § 5253 (2d ed. 1994). And while intent may be at issue here, *cf. United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 479 (10th Cir. 1990), Golubski's intent to derive sexual pleasure from the acts is implied by the nature and circumstances of the crime charged, arguably making the evidence of intent of limited probative value. So, while each may be an independent basis for admission, there is no need to make such a finding given that admission for the purpose of identity implicates no similar dangers.

112 F.3d at 1420. A core set of overlapping circumstances is sufficient, including the use of a distinctive device, *e.g., United States v. Reynoso*, No. 20-2130, 2023 WL 4586142, at *4 (10th Cir. July 18, 2023) (use of a gray Ford Fusion), or the fact that the alleged acts occurred in a shared, unique geographic location, *e.g., United States v. Porter*, 881 F.2d 878, 887 (10th Cir. 1989) (small, rural Kansas towns).

The alleged shared characteristics between the testimony of OV 6 and 7 and S.K. and O.W. are unique enough to qualify as a *modus operandi*. Not only did the acts here occur in a shared geographic location (the Kansas City, Kansas area), they also share the use of distinctive devices (police vehicles, official badges, and weapons). And the overall pattern employed indicates a "signature quality" based on the totality of the circumstances: that Golubski allegedly used his authority to threaten the lives and liberty of potential victims that were vulnerable to his entreaties. *Cf. United States v. Roberts*, 185 F.3d 1125, 1142 (10th Cir. 1999) (finding that a series of assaults committed against employees following a request for a one-on-one meeting shared a sufficient "pattern" to admit the evidence under Rule 404(b)); *United States v. Begay*, 497 F. Supp. 3d 1025, 1066 (D.N.M. 2020) (finding that catching a victim sleeping or while alone and then using a size advantage to intimidate the victim into staying silent is a sufficient pattern).

Golubski argues that identity is not at issue because he disputes that the alleged assaults ever occurred. As a result, his argument continues, plan or *modus operandi* evidence that goes to the identity of the perpetrator is irrelevant and inadmissible. It is true that the Supreme Court has held that Rule 404(b) requires that a fact be disputed before evidence which tends to prove or disprove it may be admitted. *Huddleston v. United States*, 485 U.S. 681, 686 (1988). But Golubski says he did not commit the crime(s), for one reason or another, making the identity of the perpetrator the fundamental question. *United States v. Montoya*, 41 F.3d 1516 (10th Cir. 1994) (affirming a district court's finding that identity was at issue for purposes of Rule 404(b) analysis when the defendant claimed he never engaged in any of the sexual acts charged); *compare Chavez v. City of Albuquerque*, 402 F.3d 1039, 1046 (10th Cir. 2005) (holding that identity was not at issue when the opposing party admitted to using a certain set of tactics), *with United States v. Reynoso,* 861 F. App'x 204, 209 (10th Cir. 2021) (holding identity was in issue when defendant disputed committing both the charged and uncharged acts).

Finally, Rule 403 does not suggest exclusion is warranted if the evidence is admitted to show *modus operandi*. *Contra* Doc. 54 at 11. In the

404(b) context, the typical balancing test under Rule 403 applies, weighing probative value against the possibility of enumerated prejudicial dangers. *See, e.g., United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001); *see also United States v. Miller*, No. 23-CR-241, 2023 WL 6214031 (N.D. Okla. Sept. 25, 2023). It does not require analysis of the *Enjady* factors. *Tan*, 254 F.3d at 1211. "[E]xclusion of evidence under Rule 403 is an extraordinary remedy [that] should be used sparingly." *United States v. McGlothin,* 705 F.3d 1254, 1266 (10th Cir. 2013) (internal quotation marks omitted).

The proposed testimony of OVs 6 and 7 is highly probative of the identity of the perpetrator. For example, they allege that the perpetrator utilized the knowledge and apparent authority of being a police officer to threaten the life or liberty of the victims (and/or her loved ones) at a time in which they were especially vulnerable. Doc. 50 at 18–20. This matters because Golubski is a former police officer.

And the prejudicial danger does not substantially outweigh the probative value of the evidence. While the attempted assaults and their details are both damaging and inflammatory, they are less lurid and shocking than the completed crimes alleged in the Indictment. That is a reason to discount the prejudicial danger of the uncharged acts. *See United States v. Austin*, 641 F. Supp. 3d 1193, 1204–05 (D. Utah 2022) (finding that evidence of non-fatal accidents admitted under Rule 404(b) was not prejudicial in comparison to the charged fatal accident).

In any event, there are ways to minimize the prejudice. In particular, specific jury instructions could distinguish the purposes for which the jury may consider the testimony of OVs 1–5 from the purposes for which the jury may consider the testimony of OVs 6 and 7. Such instructions may allay concerns about confusion or improper verdict. *See United States v. Guinn*, 89 F.4th 838, 845 (10th Cir. 2023) (discussing permissible jury instructions); *United States v. McHorse*, 179 F.3d 889, 903 (10th Cir. 1999) (same); *see also United States v. Begay*, 497 F. Supp. 3d 1025, 1066 (D.N.M. 2020) (noting "as a practical matter" the difficulty of permitting evidence under Rule 414, which, like Rule 413, permits a propensity inference, and evidence under Rule 404(b), which does not, and resolving the issue through "a limiting instruction").

Finally, as is the case with OVs 1–5, there appears to be no other less prejudicial evidence available than the testimony of OVs 6 and 7. Again, if the evidence becomes needlessly cumulative at trial, that issue can be addressed at the proper time.

### III

For the foregoing reasons, and assuming that the witnesses testify as proposed, the Government's Motion to Admit Evidence under Rules 413 and 404(b), Doc. 50, is GRANTED.

It is so ordered.


Date: March 20, 2024                             s/ Toby Crouse
                                                           Toby Crouse
                                                           United States District Judge