**In the United States District Court
for the District of Kansas**

———————

Case No. 22-cr-40055-TC-1

———————

UNITED STATES OF AMERICA,

*Plaintiff*

v.

ROGER GOLUBSKI,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Roger Golubski is charged with six counts of violating 18 U.S.C. § 242. Doc. 73. He seeks dismissal of the Superseding Indictment on the grounds that it is time-barred, Doc. 71, and fails to state an offense due to a lack of "fair warning" that the charged conduct fell within the scope of Section 242, Doc. 72. For the following reasons, his motions are denied.

**I**

**A**

"No person shall be held to answer for … a crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. An indictment must provide sufficient detail to give a criminal defendant notice of the charges that he or she must defend and an opportunity to organize defenses such as a prior acquittal. *United States v. Berres*, 777 F.3d 1083, 1089 (10th Cir. 2015); *United States v. Washington*, 653 F.3d 1251, 1259 (10th Cir. 2011).

A court may dismiss an indictment prior to trial if it fails to state an offense for which the defendant could be convicted. Fed. R. Crim. P. 12(b)(3)(B)(v). Such is the case when, as a matter of law, the Government is incapable of proving its case beyond a reasonable doubt.

1

*United States v. Chavez*, 29 F.4th 1223, 1226 (10th Cir.), *cert. denied*, 143 S. Ct. 485 (2022). In making that determination, a court may only consider the allegations on the face of the indictment and any undisputed facts. *Id.* (citing *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010)).

**B**

A Kansas grand jury indicted Golubski with six counts of violating 18 U.S.C. § 242. Doc. 1; *see also* Doc. 73.[1] In each of the first three counts the Government alleges that Golubski, while acting under color of law, willfully deprived S.K., who was a minor at the time of the alleged assaults, of a substantive due process right to bodily integrity when he allegedly sexually assaulted her in a manner that constituted aggravated sexual abuse, attempted aggravated sexual abuse, kidnapping, and attempted kidnapping. Doc. 73 at 1–3. In each of the remaining three counts, the Government alleges that Golubski, again while acting under color of law, willfully deprived O.W. of the same right through aggravated sexual abuse, kidnapping, and attempts to do the same. *Id.* at 3–6. O.W. was not a minor at the time of the alleged assaults. All the charged conduct is alleged to have occurred between September 1997 and December 2002. Doc. 73. An indictment was filed on September 14, 2022. Doc. 1. A superseding indictment modifying the dates of the alleged conduct was filed April 24, 2024. Doc. 73.

Golubski has filed two motions to dismiss the indictment, both of which argue that the Superseding Indictment fails to state an offense for which he could be convicted at trial. Docs. 71 and 72. A hearing on his motions was held May 30, 2024. Doc. 78.

**II**

Golubski contends that the Superseding Indictment must be dismissed because the statute of limitations for the charged conduct has run and because the state of the law at the time of his alleged conduct failed to give him "fair warning" that aggravated sexual abuse and kidnapping under color of state law was within the scope of Section 242.

---

[1] All document citations are to the document and page number assigned in the CM/ECF system.

Neither argument has merit. As a result, his motions to dismiss are denied.

## A

Golubski contends that the statute of limitations precludes the Government from prosecuting him for conduct that is alleged to have occurred as far back as 1997. Contrary to Golubski's position, the unlimited statute of limitations period in 18 U.S.C. § 3281 is applicable and permits this prosecution.

### 1

When a federal criminal defendant raises a statute of limitations defense, the Government bears the burden of establishing compliance with the statute of limitations "by presenting evidence that the crime was committed within the limitations period." *Musacchio v. United States*, 577 U.S. 237, 248 (2016). If the applicable statute of limitations has run, that is grounds for dismissing an indictment pretrial. *See United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1270 (10th Cir. 2018).

A limitations period begins to run as soon as every element of the crime to which it applies has been completed. *United States v. Reitmeyer*, 356 F.3d 1313, 1317 (10th Cir. 2004). In a situation where neither side questions the date of the alleged crimes or the indictment date, determining the limitations period is typically a legal question of statutory interpretation. *See, e.g., United States v. DeLia*, 906 F.3d 1212, 1216 (10th Cir. 2018) (interpreting the effect of the Wartime Suspension of Limitations Act on 18 U.S.C. § 3282(a)); *United States v. Brody*, 621 F. Supp. 2d 1196, 1198 (D. Utah 2009) (interpreting 18 U.S.C. § 3292).

There are two statutes of limitations implicated by this dispute. One is the unlimited statute of limitations applicable to "any offense punishable by death." 18 U.S.C. § 3281. The other is the five-year default statute of limitations for "noncapital" offenses. 18 U.S.C. § 3282(a). Section 3282(a) generally applies when Congress has not

provided for another applicable period of limitations. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).[2]

**2**

The parties dispute whether Section 3281 applies to prosecutions for violating 18 U.S.C. § 242. Based on the clear, unambiguous text of Section 242 and controlling precedent from the Tenth Circuit, it does. As a result, Golubski's motion to dismiss, Doc. 71, is denied.

The text of Section 3281 requires a determination as to what constitutes an "offense punishable by death." An "offense" typically refers to an act or series of acts that is punishable by statute. *Offense, Black's Law Dictionary* (11th ed. 2019*); see also Offense, Black's Law Dictionary* (4th rev. ed. 1968). And determining whether an act or series of acts is "punishable by death" depends on the statutorily authorized punishments provided for in the statute which created that particular offense. *See United States v. Murphy*, 100 F.4th 1184, 1204 (10th Cir. 2024).

Thus, Section 3281 applies to any offense for which the death penalty is an option provided for by statute, regardless of whether death as a penalty could be actually imposed. *Contra* Doc. 71 at 12–13 (arguing that the fact that the death penalty cannot be constitutionally imposed unless death results suggests that Section 3281 must be read to apply only to offenses resulting in death). The defendant in *Murphy* recently made an argument similar to Golubski, contending that while the statute giving rise to his convictions permitted imposition of the death penalty, his acts were not punishable by death because they were committed within the Muscogee Nation where the death penalty had not been adopted as a form of punishment. 100 F.4th at 1204. The Tenth Circuit upheld the district court's rejection of that argument. *Murphy*, 100 F.4th at 1206. In doing so, it concluded that the applicability of Section 3281 turns on "whether the death penalty may be imposed for the crime" per the statute which makes the acts punishable. *Id.* at 1207 (internal citations omitted).

---

[2] A third statute potentially implicated is 18 U.S.C. § 3283, which the Government argues could apply to the charges involving S.K. Doc. 75 at 14. But that argument is not being considered because Section 3281 applies to all the charges in the Superseding Indictment.

*Murphy*'s conclusion, although a matter of first impression within the Tenth Circuit, is consistent with other decisions involving similar issues. For example, the Supreme Court, in *United States v. Briggs*, 592 U.S. 69, 72 (2020), held that the phrase "punishable by death" in the Uniform Code of Military Justice referred only to whether the statute describing the "offense" included death as a possible punishment without regard to whether death could have been lawfully imposed for the crime at issue. *Id.* Other circuits' law on this issue is in accord. *See, e.g.*, *United States v. Ealy*, 363 F.3d 292, 296–97 (4th Cir. 2004) ("whether a crime is 'punishable by death' under § 3281 or 'capital' under § 3282 depends on whether the death penalty may be imposed for the crime under the enabling statute, not 'on whether the death penalty is in fact available for defendants in a particular case'"); *United States v. Gallaher*, 624 F.3d 934, 940–41 (9th Cir. 2010); *United States v. Edwards*, 159 F.3d 1117, 1128 (8th Cir. 1998).

Sound reasons support that view. For one thing, it provides clarity as to which limitations period applies because it removes the possibility that ever-evolving precedent changes the applicable limitations period. Indeterminacy is antithetical to congressional purpose when enacting a limitations statute. *Briggs*, 592 U.S. at 74. For another, interpreting the phrase "punishable by death" as a term of art that means "statutorily subject to a possible penalty of death," avoids interpreting statutory language as mandating death when it is constitutionally unavailable. Instead, as some courts have noted, it treats the phrase as a signal of the gravity of the offense. *See Gallaher*, 624 F.3d at 939–40.

Section 242, the statute which makes the charged conduct punishable, unambiguously includes death as a permissible penalty. The plain text of the statute supports this conclusion. It reads, in pertinent part, as follows:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts

5

> committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 242. As a result, Section 3281 applies to Golubski's charges, rendering the Superseding Indictment within the limitations period. *See Murphy*, 100 F.4th at 1206; *see also United States v. Harvel*, No. 2:21-CR-00005, 2022 WL 2678730 (M.D. Tenn. July 11, 2022) (applying Section 3281 to a Section 242 prosecution where a county official used his authority to sexually assault women he supervised).

**3**

Golubski made a variety of contrary arguments in his written submissions and at oral argument. None are viable.

His lead argument is that the death provision in the text of Section 242 only applies when the offense results in death. Doc. 71 at 7–15. That, as noted above, is not how Section 3281 works. It is enough that death is a possible penalty for a Section 242 offense, irrespective of whether Golubski could be put to death for his alleged conduct.

His next argument is somewhat related. He contends that the distributive canon of interpretation supports his textual approach. Doc. 77 at 4 (citing *Scalia & Garner, Reading Law: The Interpretation of Legal Texts* 214 (2012)). Specifically, he argues that the third clause of Section 242 should be read distributively such that fines or imprisonment are the applicable punishment for kidnapping and aggravated sexual abuse, and death is the punishment for acts where "death results." *Id.* But that position—in addition to misapprehending how controlling precedent applies Section 3281, *supra* II.A.2.—is foreclosed by the absence of distributive language in the text of Section 242 such as respectively, apiece, or per, the absence of "one-to-one matching" between antecedents and consequents in the final clause, and the fact that a

disjunctive reading is linguistically possible (and simpler). *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88 (2018).

His third argument is that even if kidnapping and aggravated sexual abuse are subject to the Section 242 death provision, those triggering acts are not present here because the jurisdictional elements of those federal crimes are not alleged in the indictment. Doc. 71 at 16 (citing 18 U.S.C. §§ 1201, 2241). In other words, Golubski believes Section 242's third clause should be interpreted to read "… or if such acts include kidnapping [involving interstate or foreign commerce, the special maritime, territorial, or aircraft jurisdiction of the United States, a foreign official, or a government official in the performance of his or her duties], [or] aggravated sexual abuse [in the special maritime and territorial jurisdiction of the United States or in a Federal prison] … [the perpetrator] … may be sentenced to death." That view lacks support within the Tenth Circuit and is contrary to every circuit to address the issue. *See, e.g., United States v. Shaw*, 891 F.3d 441, 447 (3d Cir. 2018); *United States v. Lanham*, 617 F.3d 873, 888 (6th Cir. 2010); *United States v. Holly*, 488 F.3d 1298, 1301 (10th Cir. 2007); *United States v. Simmons*, 470 F.3d 1115, 1120 (5th Cir. 2006); *United States v. Giordano*, 442 F.3d 30, 47 (2d Cir. 2006); *United States v. Guidry*, 456 F.3d 493, 510 (5th Cir. 2006).

Golubski's remaining arguments draw on extratextual considerations of "statutory context, structure, history, and purpose." Doc. 71 at 13. Those arguments are beside the point because Section 242 unambiguously includes death as a possible punishment. *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 653 (2020) (recognizing that "[w]hen the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law"). But even setting that point aside, Golubski's arguments fail. For example, the other statutes he points to as support for his context argument are not *in pari materia, contra* Doc. 77 at 4-6, because they do not address the punishments applicable to crimes occurring under color of state law and are therefore irrelevant. *Cf. Wachovia Bank v. Schmidt*, 546 U.S. 303, 315 (2006) (determining that venue and subject-matter jurisdiction are not the same subject matter for *in pari materia* purposes). And his argument that Congress intended in 1994 to apply the death penalty only to violations of Section 242 resulting in death based on the subheadings of the relevant public law is unsound. *See* Doc. 77 at 7–9 (referring to Pub. L. 103-322, 108 Stat. 1796, 1970–71 (1994)). Where the text of the U.S. Code is unambiguous, giving

interpretive weight to headings in a public law is improper. *Scalia & Garner, Reading Law: The Interpretation of Legal Texts* 221-22 (2012) (citing *Bhd. of R. R. Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 529 (1947), and noting that a title or heading should never be allowed to override the plain words of a text).

**B**

Golubski also contends that in 1997 the state of the law did not provide him with "fair warning" that he could be held criminally liable under 18 U.S.C. § 242 when using his badge of authority to engage in kidnapping and/or sexual abuse. That argument fails as a matter of law.

**1**

Over time, Congress has gradually enlarged the scope of liability and the list of possible punishments for violation of Section 242 and its predecessors. *See, e.g.*, 14 Stat. 27 (1866); 62 Stat. 696 (1948); Pub. L. 90-284, 82 Stat. 73, 75 (1968); Pub. L. 100-690, 102 Stat. 4181, 4396 (1988); Pub. L. 103-322, 108 Stat. 1796, 1970–71 (1994); Pub. L. No. 104-294, 110 Stat. 3488, 3511 (1996). That expansion of liability and gravity of punishment led to concerns that Section 242 swept too broadly, criminalizing a range of good faith state action only post hoc held to infringe on constitutional rights. *See Screws v. United States*, 325 U.S. 91, 104–07 (1945). Thus, the Supreme Court highlighted two limitations on Section 242 liability in *Lanier*: the charged conduct must be "willful," and the state of the law must have provided "fair warning" the charged conduct violated constitutional rights, privileges, or immunities at the time it allegedly occurred. *United States v. Lanier*, 520 U.S. 259, 267 (1997); *see also Screws*, 325 U.S. at 106-07. Golubski's argument focuses exclusively on the "fair warning" issue.

The "fair warning" standard allows for the imposition of Section 242 liability "if, but only if, 'in the light of pre-existing law the unlawfulness is apparent.'" *Lanier*, 520 U.S. at 271 (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)) (internal alterations omitted). Thus, "fair warning" functions much like its civil equivalent, qualified immunity. *See id.* at 270–71 (1997) (analyzing "fair warning" and qualified immunity in parallel). If, at the time of the charged conduct, a reasonable person would have or should have known that the charged conduct tended to violate a victim's established constitutional rights, privileges, or immunities, then the case may go forward. *See, e.g.*, *United States v.*

8

*Hill*, 99 F.4th 1289, 1300 (11th Cir. 2024) (holding that the use of restraint chairs on compliant, nonresistant detainees constituted excessive and thus unconstitutional force such that a defendant had "fair warning" of possible Section 242 liability).

**2**

The Superseding Indictment alleges that Golubski deprived S.K. and O.W. of a right to bodily integrity when, acting under color of law, he allegedly committed and attempted to commit acts of kidnapping and aggravated sexual abuse between September 1997 and December 2002. Doc. 73. The state of the law at the time provided Golubski ample warning that using state authority to engage in kidnapping and aggravated sexual assault would deprive a victim of a Fourteenth Amendment right to bodily integrity.

**a.** The right to bodily integrity has been and continues to be recognized by the Supreme Court. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.") (internal quotation marks omitted); *see also Union Pacific R. Co. v. Botsford*, 141 U.S. 250, 251 (1891); *Rochin v. California*, 342 U.S. 165 (1952); *Ingraham v. Wright*, 430 U.S. 651 (1977) (corporal punishment in public school violates bodily integrity); *Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 278 (1990) (unwanted medical treatment violates bodily integrity); *Washington v. Harper*, 494 U.S. 210, 221–22 (1990) (same); *Riggins v. Nevada*, 504 U.S. 127 (1992) (same). Although the Court has recently rejected overly malleable substantive due process analysis, *see Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 239 (2022), neither the Supreme Court nor any other court has ever suggested that Fourteenth Amendment substantive due process rights do not include a right to bodily integrity. *See Dobbs*, 597 U.S. at 256–57 (favorably citing cases involving the right not to be sterilized without consent and the right not to undergo involuntary surgery and noting "our conclusion that the Constitution does not confer [a right to an abortion] does not undermine [those cases] in any way"); *see also Hess v. Garcia*, 72 F.4th 753, 756 (7th Cir. 2023) (Where "a plaintiff plausibly alleges sexual assault by a public official acting under color of law, that plaintiff has stated a claim for a violation of [the] right to bodily integrity protected under the Fourteenth Amendment.").

And prior to 1997, the law was clear that sexual assault and kidnapping under color of law violated the constitutional right to bodily

integrity. For example, in *Abeyta*, the Tenth Circuit held that sexual assault or molestation by a public school teacher "violates a student's substantive due process rights" because it "is an intrusion of the student's bodily integrity." *Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996). Other circuits came to similar conclusions in the context of willful conduct, including sexual assault, committed by police officers, public teachers, border patrol, and other government employees. *See, e.g., Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997); *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 479 (9th Cir. 1991); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720 (3d Cir. 1989); *United States v. Brummett*, 786 F.2d 720 (6th Cir. 1986); *United States v. Davila*, 704 F.2d 749 (5th Cir. 1983).

That level of clarity is unsurprising, as it aligns with common sense and the development of the law for centuries. Our nation's history and traditions strongly suggest that bodily integrity is an "essential component," "of ordered liberty." *See Dobbs*, 597 U.S. at 216. Forcible sexual contact was long actionable in certain circumstances at common law. *See* Bracton, 2 De legibus et consuetudinibus Angliae (On the Laws and Customs of England) 414 (T. Twiss ed. 1883) (original edition published 1569); 4 *William Blackstone, Commentaries* *210; *accord Coker v. Georgia*, 433 U.S. 584, 597 (1977) (recognizing that "[s]hort of homicide, [rape] is the 'ultimate violation of self'" and is a crime which displays "total contempt" for personal integrity). And a right to bodily integrity, construed as a right to personal security against invasion of one's body by others, was considered an essential part of the rights of a citizen. *See* 1 *Blackstone, Commentaries* *125, *130, *136 (describing "the three great and primary rights," of personal security, personal liberty, and private property). In short, the overwhelming weight of authority and tradition suggests that the right not to be subjected to sexual assault and kidnapping by state actors has been part of "ordered liberty" for centuries.

**b.** Golubski resists that conclusion on several related grounds. Each is unpersuasive.

He contends first that *United States v. Lanier*, 520 U.S. 259 (1997), requires dismissal to the extent it left open the issue of whether sexual assault by a state actor fell within the coverage of Section 242. Doc. 72 at 5-8. Golubski misapprehends *Lanier*. The Supreme Court's holding in *Lanier* is straightforward: It rejected the Sixth Circuit's formulation of the "fair warning" standard which would have required a Supreme Court decision recognizing the specific constitutional right in a dispute

involving fundamentally similar facts. 520 U.S. at 261. As a result, the Court vacated the Sixth Circuit's judgment and remanded the case. *Id.* But in doing so, the Supreme Court recognized that several issues were not subject to any reasonable debate. *Id.* at 272 n.7. As relevant here, the Supreme Court rejected Lanier's contention that the right to be free from assault committed by a state official was one limited only to encounters occurring within a custodial setting. *Id.* (referring to this argument, which relied on *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989), as one "plainly without merit"); *see also* Brief for Respondent, *United States v. Lanier*, 520 U.S. 259 (1997) (No. 95-1717), 1996 WL 528327, at * 25–26 (relying on *DeShaney* for this custodial/non-custodial argument).

Indeed, Golubski fails to identify a single case where his argument has been made, much less prevailed. The authorities, as his brief notes, are to the contrary: Prosecutions for acts similar to what Golubski is accused of committing occurred across the country—before and after *Lanier*—without any constitutional concern. *See, e.g.*, *United States v. Contreras*, 950 F.2d 232 (5th Cir. 1991) (holding that evidence was sufficient for a jury to conclude that an on-duty police officer violated Section 242 when he committed sexual assault); *United States v. Volpe*, 224 F.3d 72 (2d Cir. 2000) (upholding the sentencing of a police officer convicted of sexual assault of a victim in police custody in violation of Section 242). And that trend continues. *United States v. Harvel*, No. 2:21-CR-00005, 2022 WL 2678730 (M.D. Tenn. July 11, 2022). That those cases "did not investigate the propriety of the underlying constitutional theories," is not evidence that the underlying constitutional theory is suspect. *Contra* Doc. 72 at 7. Put simply, it is clearly established that a state official violates an individual's right to bodily integrity when he or she commits a sexual assault or kidnapping while acting under color of state law. *Hess v. Garcia*, 72 F.4th at 756.

And it is no answer, as Golubski argued at the hearing, that the right to bodily integrity is more frequently recognized in the civil—as opposed to criminal—context. The Supreme Court has long treated the elements and textual language of the two statutes—42 U.S.C. § 1983 and 18 U.S.C. § 242—similarly. *Monroe v. Pape*, 365 U.S. 167, 171-87 (1961). The only difference is that the Government must prove willfulness to establish criminal liability. *Hope v. Pelzer*, 536 U.S. 730, 731 (2002). While the procedural context may change, the constitutional right at issue does not. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982) (citing *United States v. Classic*, 313 U.S. 299 (1941), a case which

involved Section 242's predecessor, as support for the clarity of law in a Section 1983 action); *see also United States v. Reese*, 2 F.3d 870, 884 (9th Cir. 1993) ("The protections of the Constitution do not change according to the procedural context in which they are enforced—whether the allegation that constitutional rights have been transgressed is raised in a civil action or in a criminal prosecution, they are the same constitutional rights."). So, even accepting that the right is most frequently recognized in the civil cases, the constitutional right is equally cognizable in the criminal context.

Finally, Golubski argued at the hearing that oral argument transcripts from *Lanier* suggested that one Justice (or several) may have been sympathetic to (or even shared) Golubski's view that at the time there was no substantive due process right to avoid being raped or kidnapped by a state actor. Even accepting that his interpretation of the oral argument is accurate, it is immaterial. Federal trial courts in Kansas are bound to apply the holdings of the Supreme Court and the Tenth Circuit, not the implications of an exchange during oral argument. *See United States v. Maloid*, 71 F.4th 795, 808 (10th Cir. 2023) (describing vertical *stare decisis*), *cert. denied*, 144 S. Ct. 1035 (2024); *see also Alexander v. Sandoval*, 532 U.S. 275, 282 (2001) (recognizing the Supreme Court is bound by a prior decision's holding, not language within the decision).

### III

For the foregoing reasons, Golubski's Motions to Dismiss the Indictment, Docs. 71 and 72, are DENIED.

It is so ordered.

Date: June 27, 2024           s/ Toby Crouse
                              Toby Crouse
                              United States District Judge